Donald DUNCAN, Mona J. Duncan, Trevor Duncan, Nathan Duncan, Brady Duncan, and Wisconsin Physicians Service, Plaintiffs,

v.

Wayne E. EHRHARD, Defendant-Third-Party Plaintiff,

AUTO-OWNERS INSURANCE COMPANY, Defendant-Third-Party Respondent,

CHETEK AREA SCHOOL DISTRICT, Defendant,

EMPLOYERS INSURANCE OF WAUSAU, Defendant-Appellant,

v.

CONTINENTAL WESTERN INSURANCE COMPANY, Third-Party Defendant.

Court of Appeals

*No. 90–0107. Oral argument July 17, 1990.—Decided September 25, 1990.*

(Also reported in 461 N.W.2d 822.)

253

On behalf of defendant-appellant, the cause was submitted on the briefs of and orally argued by *Arnold P. Anderson* of *Capwell, Berthelsen, Nolden, Casanova, Pitts & Kallenbach, Ltd.* of Racine.

On behalf of defendant third-party respondent, the cause was submitted on the brief of *James E. Garvey* and *Carol S. Dittmar* and orally argued by *James E. Garvey* of *Garvey, Anderson, Kelly & Ryberg, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Employers Insurance of Wausau and Auto-Owners Insurance Company, the only partici-

pants in this appeal, dispute which is the primary and which the excess carrier, and whether the $50,000 damages cap upon government employees' and agents' liability set forth in sec. 893.80(3), Stats., has any application. The issue arises following Auto-Owners' settlement with an injured plaintiff involved in a collision with a school bus that both companies insured. Employers appeals a summary judgment declaring it the primary insurer and holding it responsible to reimburse Auto-Owners.

The circuit court ruled that Employers, as the insurer of the vehicles of the Chetek Area School District, is primary, regardless of the terms of the two insurance policies, based upon sec. 345.05(2), Stats., the legislative declaration of municipal liability for motor vehicle accidents that also declares a municipality the owner of vehicles that it rents or leases.[1] Both the Auto-Owners policy issued to the titled owner of the bus specifically

---

[1]Section 345.05(2) provides:

> A person suffering any damage proximately resulting from the negligent operation of a motor vehicle owned and operated by a municipality, which damage was occasioned by the operation of the motor vehicle in the course of its business, may file a claim for damages against the municipality concerned . . .. *In this subsection, a motor vehicle is deemed owned and operated by a municipality if the vehicle is either being rented or leased,* or is being purchased under a contract whereby the municipality will acquire title. (Emphasis added.)

Our supreme court gave a broad interpretation to the words "rented or leased" in *Manor v. Hanson,* 123 Wis. 2d 524, 533, 368 N.W.2d 41, 45 (1985). That court held that Trempealeau County rented a vehicle within the meaning of this statute when it reimbursed a volunteer on a per-mile basis for her services in a county volunteer transportation program. Thus, the county was liable for the damages incurred when a third person was killed in a collision with a vehicle negligently driven by one of the volunteers. Although the court's holding imposed liability upon the county's

255

naming the bus as an insured vehicle, as well as the Employers policy, included "other insurance" clauses. We conclude that sec. 345.05(3) does not govern the coverage dispute between the two insurers; that the "other insurance" clauses of the policies determine which is primary, and the plain language of both establish Auto-Owners as primary. We also conclude that Auto-Owners' policy contains a waiver of the $50,000 liability cap imposed upon government agents by sec. 893.80(3), Stats. We therefore reverse and remand for entry of judgment in favor of Employers.

Construction of words and clauses in insurance policies is a question of law that is properly decided on motion for summary judgment. *Jones v. Sears Roebuck & Co.,* 80 Wis. 2d 321, 327, 259 N.W.2d 70, 72 (1977). Construction of a statute in relation to a given set of facts is also a question of law. *Waste Mgmt. v. DNR,* 128 Wis. 2d 59, 81, 381 N.W.2d 318, 328 (1986). This court decides questions of law without deference to the trial court. *Green Scapular Crusade v. Town of Palmyra,* 118 Wis. 2d 135, 138, 345 N.W.2d 523, 526 (Ct. App. 1984).

These are the undisputed facts. Wayne Ehrhard was driving his sixty-five-passenger school bus pursuant to a written contract with the Chetek Area School District, and, while pulling out from a stop sign to cross a county highway, struck and injured the driver and several children in a passing auto in May 1986.[2] Ehrhard's school district contract provided payment by the mile for his transportation services and also required him to

---

insurer, *Manor* did not involve an issue of primary insurance coverage between two policies covering the same vehicle.

[2]Although Ehrhard was on his way home with an empty bus, no question is raised whether he was operating as an agent of the school district at the time of the collision.

purchase liability insurance covering the bus with the minimum statutorily required insurance established by sec. 40.57, Stats. (now sec. 121.53, Stats.). Ehrhard purchased the policy from Auto-Owners. Chetek, meanwhile, also maintained a "business auto policy" with Employers Insurance of Wausau providing liability coverage for "any auto." The other insurance clauses of each policy are set forth later herein. Auto-Owners settled the claims of the injured plaintiffs. It then sought payment from Employers for $404,400, representing its policy limits of $500,000 paid to the driver, less certain sums deducted that are not in dispute.

The circuit court awarded summary judgment to Auto-Owners declaring Employers the primary insurer of the vehicle "owner," Chetek. The court concluded that because sec. 345.05(2), Stats., imposed liability upon the school district as a matter of law for accidents caused by the negligent operation of vehicles that it owns and operates, and because it owned and operated the bus by virtue of its contract with Ehrhard, no analysis of the two insurance policies was necessary.[3]

---

[3] At common-law, a municipality was immune from liability for the negligence of its employees engaged in the performance of a public or governmental function. *Engel v. City of Milwaukee,* 158 Wis. 480, 481, 149 N.W. 141, 141 (1914). The Wisconsin Legislature, however, long before this common-law doctrine of governmental immunity was repealed in *Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 115 N.W.2d 618 (1962), adopted sec. 66.095, Stats. (now sec. 345.05(2)), and created an exception to common-law immunity where injuries are occasioned by the negligent operation of motor vehicles owned and operated by a municipality. This statutory liability was held to extend to injuries occasioned by the negligent operation of a municipal school bus. *Huettner v. City of Eau Claire,* 243 Wis. 80, 9 N.W.2d 583 (1943).

The circuit court's rationale appears contrary to the supreme court's reasoning in *Continental Cas. Co. v. Transport Indem. Co.,* 16 Wis. 2d 189, 114 N.W.2d 137 (1962). *Continental* dealt with another legislative declaration of liability, sec. 194.41(1), Stats., holding the insurer of the owner or operator of a motor vehicle engaged in public transportation directly liable for the injuries caused by the negligent use of such a vehicle. *Id.* at 195–96, 114 N.W.2d at 140. *Continental,* acknowledging that the lessee of the insured vehicle was an "owner" for purposes of the statute (similar to the school district here), nevertheless held that the statute "does not require all insurance policies to provide primary coverage." *Id.* at 196, 114 N.W.2d at 141. The court instead applied the other insurance clauses of the two policies involved to determine which was primary and which excess. We adopt the same procedure here and turn therefore to the other insurance provisions of the two policies involved here:

## AUTO-OWNERS

**Other Insurance** If there is other collectible automobile liability insurance, we will pay only our share of the loss. Our share will be the proportion our limit of liability bears to the total of all available limits. However, if you are engaged commercially in transporting property for others, this insurance will be excess over other insurance available to you under policies issued to persons or organizations to meet the security requirements of any motor carrier law of regulation. The *coverage* extended *to automobiles you do not own will be excess* over any other insurance available to you. (Emphasis added.)

## B. OTHER INSURANCE

1. *For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess* over any other collectible insurance. However, while a covered auto which is a trailer is connected to another vehicle the liability coverage this policy provides for the trailer:

   a. Is excess while it is connected to a motor vehicle you don't own.

   b. Is primary while it *is connected to a covered auto you* own.

2. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis. (Emphasis added.)

Insurance contracts are controlled by the same rules of construction applied to other contracts. *Wood v. American Family Mut. Ins. Co.,* 148 Wis. 2d 639, 652, 436 N.W.2d 594, 599 (1989). Where the terms of a policy are unambiguous, this court merely applies those terms rather than engaging in construction. *Wagner v. Milwaukee Mut. Ins. Co.,* 145 Wis. 2d 609, 614, 427 N.W.2d 854, 856 (Ct. App. 1988). Where one policy provides an excess clause and the other a pro rata clause, the "overwhelming majority view" (including Wisconsin) gives effect to the excess clause and the pro rata policy is deemed primary. *Lubow v. Morrissey,* 13 Wis. 2d 114, 123, 108 N.W.2d 156, 162 (1961).

Auto-Owners' excess clause applies only to vehicles that Ehrhard did not own; Employers' excess clause applies to covered autos the school district did not own. Neither policy includes a definition of "ownership." Consistent with the rationale in *Continental,* however, we do not apply the statutory mandate of ownership found in sec. 345.05(2), Stats. Terms in an auto liability policy are not ambiguous merely because they are not defined in the policy; words are to be given their common meaning, absent an ambiguity. *Welter v. Singer,* 126 Wis. 2d 242, 248–49, 376 N.W.2d 84, 86 (Ct. App. 1985). In common usage, "owner" is often equated to title-ownership. *Kietlinski v. Interstate Trans. Lines,* 3 Wis. 2d 451, 458, 88 N.W.2d 739, 743 (1958). The reference to "own" in the two other insurance clauses should be given their common, ordinary meaning. Ehrhard, the titleholder, not the school district, owned the bus. Auto-Owners' excess clause is therefore inapplicable, and, consistent with *Lubow,* its policy is primary.

In the event that its other insurance clause does not prevail, Auto-Owners next invokes the provisions of sec. 893.80(3), Stats., providing a cap of $50,000 on liability of government bodies and their agents and employees. Auto-Owners suggests that Ehrhard's exposure as a school district agent is so restricted, and therefore its liability coverage is similarly limited. In response, Employers points to the School or Church Bus Endorsement in the Auto-Owners policy: "If your automobile is used as a school bus, we further agree . . . *We will* not *take advantage of any defense* other than would be *valid and legal if you were an individual* or private corporation." (Emphasis added.)

Auto-Owners maintains that this waiver of certain defenses is merely a uniform endorsement form designed

for use in diverse localities, including Wisconsin, where governmental or charitable corporations have partial or total immunity. It argues that the policy waives the defense as to these non-private corporations, but otherwise reserves defenses. Auto-Owners in effect equates "individual" with "natural person" and argues that Ehrhardt, even though a government agent, is a natural person. Auto-Owners' suggestion is a reasonable way to define an individual. It is also reasonable, however, to read the reference to "individual" as a means to distinguish a person acting in his individual *capacity,* that is, independently from a person acting as an agent, servant or employee. This latter reading is consistent with the definition of "individual" found in the dictionary: "A single or particular being . . . as . . . a particular being . . . as distinguished from a class . . .." Webster's Third New Int'l Dictionary 1152 (1976).

This alternative reading is also consistent with the general intent of the school bus endorsement waiver, that is, to forego the immunity accorded to the government. It is anomalous to waive the immunity as to the governmental unit but retain it as to its agents or employees through whom it must act, and who are ordinarily named co-defendants in tort actions.

In the event of an ambiguity, the language of a policy should be construed against the insurance company that drafted the policy. *Stanhope v. Brown City.,* 90 Wis. 2d 823, 849, 280 N.W.2d 711, 722 (1979). The test of coverage is what a reasonable person in the insured's position would believe to be covered. *Gross v. Lloyds of London Ins. Co.,* 121 Wis. 2d 78, 87, 358 N.W.2d 266, 271 (1984). We construe the term "individual" to exclude only those acting independently and not as a government agent. Auto-Owners has therefore waived any

defense provided by sec. 893.80(3), Stats. Because we so decide, it is unnecessary to address Employers' other arguments concerning the inapplicability of that statute.

*By the Court.*—Judgment reversed and cause remanded with directions.